## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Joel Munt,                                    Case No. 19-cv-0056 (JNE/HB)

          Plaintiff,

v.                                            **REPORT AND**
                                              **RECOMMENDATION**

Paul Schnell, Collin Gau, Grievance Appeal
Coordinators, Michelle Smith, Sherlinda
Wheeler, Lt. Hills, Other OPH Mailroom
Staff, David Reishus, Steve McCarty,
Bronson Austreng, Lt. Besonen, Stephanie
Huppert, OPH Grievance Coordinators, Mike
Warner, Lt. Milliron, and Mark Arneson,

          Defendants.

      This matter is before the Court on Defendants' Motion to Dismiss (ECF No. 38).[1]

This matter was referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636

and District of Minnesota Local Rule 72.1.  For the reasons stated below, this Court

recommends granting Defendants' motion and dismissing this case.

## I.   PROCEDURAL HISTORY

      Plaintiff Joel Marvin Munt filed suit on January 9, 2019 (Compl., ECF No. 1).

Munt simultaneously sought *in forma pauperis* ("IFP") (ECF No. 2).  Munt was required

to pay an initial partial filing fee (ECF No. 5).  Munt paid the fee, (ECF No.6), then

---

[1] Also pending before the Court are Plaintiff's "Requests for Court Actions," (ECF
No. 47), and "Request to Reply and Reply to Defendants' Response to His Request for
Court Actions" (ECF No. 61).  Those motions were denied except his request for
sanctions which was held in abeyance.  (ECF No. 62; ECF No. 65 (overruling objections
and affirming order)).  These filings are discussed at the end of this R&R.

moved to stay his lawsuit (ECF No. 8).  The Court denied that stay (ECF No. 8), Munt objected (ECF No. 9), and the District Court affirmed the denial (ECF No. 10).

After Munt paid the initial partial filing fee, the Court screened his Complaint pursuant to 28 U.S.C. § 1915A and issued a report and recommendation ("R&R") (ECF No. 15).  The Court noted Munt's Complaint suffered from three major infirmities: (1) identifying individuals in the caption but nowhere in the body of the complaint; (2) naming one individual and seven entities in the body of the complaint but not in the caption; and (3) naming the United States as a defendant (ECF No. 15, at 4–5).  The Court recommended dismissal of some 34 defendants on these grounds (ECF No. 15, at 4–6).  The Court also noted that "Munt may face issues he has faced with other litigation before this Court based on the subject matter of his claims," but noted that, "at this juncture, it would be premature for the Court to dismiss claims of this potential nature without at least serving the defendants and awaiting a response or dispositive motion" (ECF No. 15, at 5).  Munt objected (ECF No. 21), and the Court adopted the R&R (ECF No. 33).

Meanwhile, Munt sought to certify his lawsuit as a class action under Federal Rule of Civil Procedure 23 (ECF No. 11).  The Court found Munt was "not capable of adequately representing the claims or needs of a class of other persons," because of his "self-professed limitations to litigating his own claims" and his *pro se* status (ECF No. 45, at 3).  Thus, the Court issued a R&R recommending that Munt's motion be denied (ECF No. 45).  Munt objected (ECF No. 56), and the Court adopted the R&R and denied his motion, (ECF No. 64).

Defendants were served and moved to dismiss Munt's complaint on several grounds (ECF Nos. 37, 38). First, Defendants argue that Munt's Complaint is neither short nor plain and violates Rule 8. Second, Defendants assert Munt fails to state a claim for relief, for legal and factual reasons. Third, Defendants assert Munt's claims for relief are barred for various reasons.

Munt filed various procedural motions in response to the above-described activity (ECF Nos. 49, 51, 53, 61). The Court granted Munt an extension of time until January 24, 2020, to respond to Defendants' motion to dismiss but otherwise denied his procedural requests (ECF No. 62). Munt objected (ECF No. 63), and the Court overruled his objections (ECF No. 65). Munt did not file a response to Defendants' motion to dismiss until March 6, 2020, six weeks after the extended deadline (ECF No. 67), but asked the Court to accept his belated filing (ECF No. 66).[2]

## II.    MUNT'S ALLEGATIONS

Munt raises 17 numbered issues and several un-numbered issues across the 64 pages of his Complaint. These 17-plus claims have little built-in factual support and are often conclusory. Several claims are blended together, making it difficult to decipher where one ends and the other begins despite the numbering system. Nevertheless, these supposedly distinct issues appear to be distillable into a single, overarching claim:

---

[2] While the Court already permitted Munt extra time to file his reply to Defendants' response (ECF No. 62), the Court grants Munt's request to file his reply late. Defendants request an opportunity to file further briefing in response to Munt's tardy filing (ECF No. 70). The Court has already received ample briefing on the pending motion to dismiss and therefore denies Defendants' request.

Defendants used the Minnesota Department of Corrections' ("MNDOC") grievance process to impede Munt's access to the courts, retaliate, and conspire to retaliate against him by inhibiting his ability to comply with the Prison Litigation Reform Act's (PLRA) administrative exhaustion requirement.  Munt's responsive briefing confirms the Court's conclusion (ECF No. 67, at 1–2).

### A.    Issue 1

Munt asserts prison grievance procedures limit him to attaching a single piece of paper to kites (Compl. ¶ 46).  Munt says his grievances have been refused by Defendant Michelle Smith, prison warden, on this ground (Compl. ¶¶ 47, 84).  Munt also asserts "[k]ites, [g]rievances[,] and [g]rievance [a]ppeals can and have been ignored due to allegedly containing insufficient information" (Compl. ¶ 48).

### B.    Issue 2

Munt asserts the kite process lacks accountability from staff who abuse the process as there are no means to verify when kites are sent and received, when a response is provided and by who, and no process for moving to the next step in the grievance procedure (Compl. ¶ 49).  Munt asserts this has interfered with his access to the courts by preventing him from exhausting administrative processes, impeding his ability to pursue habeas corpus and other petitions, loss of court papers, rendering pleadings moot, and other harm to his cases (Comp. ¶ 85).

### C.    Issues 3 and 13

Munt asserts he is required to attach prior kites to successive steps in the grievance procedure but that kites are not returned to inmates, only a memo (Compl. ¶¶ 50–51).

Munt asserts "[m]ultiple grievances and grievance appeals went unprocessed due to this" (Compl. ¶ 51). Munt also asserts staff do not respond to kites or the attachments, thus ending the procedure because inmates have nothing to attach to elevate the grievance procedure (Compl. ¶¶ 52–53). For the staff that do respond, Munt asserts they "often take far longer than the 5 business days inmates must wait before proceeding to the next step" (Compl. ¶ 54). And when inmates elevate the grievance procedure after waiting five days, Munt says staff refuses to process those appeals for failure to complete the previous steps (Compl. ¶¶ 55, 88). Munt asserts Defendants Hill, "OPH Mailroom Staff," Besonen, Warner, and Milliron "almost never respond to kites" (Compl. ¶ 56).

### D.     Issue 4

Munt takes issue with the requirement that inmates are required to bring grievances within 30 days of the event being grieved, especially when it is an ongoing issue (Compl. ¶ 58). Munt also asserts the delays in the grievance procedure assure no grievance process is completed in time (Compl. ¶ 58).

### E.     Issue 5

Munt asserts it is "often impossible to know who to write for an issue. Many conflicting answers are given" (Compl. ¶ 59). Munt asserts the MNDOC "exploits the opaque process" in defending against his lawsuits using a failure to exhaust defense (Compl. ¶ 91).

### F.     Issue 6

Munt asserts staff combine kite chains even though the process requires a single issue per kite (Compl. ¶¶ 60, 92).

### G.    Issue 7

Munt asserts all steps of the grievance process are handwritten but inmates and staff have poor handwriting (Compl. ¶ 61).  Munt asserts a handwritten process defeats the purported purpose of the grievance process to ensure communication between inmates and staff to resolve issues (Compl. ¶ 93).  Munt asserts the handwriting requirements makes identifying responding staff difficult or impossible (Compl. ¶ 93).  Munt also states that staff are not required to identify themselves or date their responses (Compl. ¶ 93).

### H.    Issue 8

Munt asserts there is no clarity as to what constitutes a single issue (Compl. ¶ 62).  Munt claims his kites have been denied because the reviewing staff found them to raise multiple issues while other kites of his have been denied because they raise the same issues as prior kites (Compl. ¶ 94).

### I.    Issues 9 and 16

Munt asserts the grievance appeal process does not provide for review of refused grievances (Compl. ¶¶ 63, 95).

### J.    Issues 10 and 11

Munt asserts staff do not read inmate communications (Compl. ¶¶ 64, 96).  Munt asserts it is "standard practice" that staff responses do not relate to the inmate communications to which they purportedly respond (Compl. ¶¶ 65, 97).

### K.     Issue 12

Munt asserts staff use policy to frustrate the grievance process (Compl. ¶ 66).

Munt asserts since November 3, 2017, the presence of a "coordinated conspiracy, system-

wide, to cripple [his] ability to use the admin process, to exercise his right of access to the

courts, to discourage him from further exercise of his rights and to discourage other

inmates from doing so as well" (Compl. ¶ 66).

### L.     Issue 14

Munt asserts that, during lockdowns or while in segregation, there is no way to

attach kites to the next step as required and staff refuses to pick up legal mail (Compl.

¶ 67).  Munt asserts staff show favoritism to some inmates while he has routinely been

refused kites (Compl. ¶ 67).  Further, Munt asserts he is required to use a punch rather

than staples and this does not adequately keep kites with their attachments (Compl. ¶ 68).

Munt claims staff do not take into account prison situations when considering the

timeliness or completeness of a grievance (Compl. ¶ 99).

### M.     Issue 15

Munt asserts the MNDOC "frequently claims in Court that those in the mandatory

formal and informal processes are not capable of acting to resolve any issues.  This is

used as an argument to escape liability" (Compl. ¶ 69).

### N.     Issue 17

Munt claims that it is standard practice to not return kites even when responding

(Compl. ¶ 70).

### O.    Additional Claims

Munt makes various claims relating to correctional staff limiting or altering his access to the grievance procedure.  Munt was placed on kite management on February 9, 2018 while at Minnesota Correctional Facility ("MCF") – Stillwater (Compl. ¶ 73).  Kite management directs all of an inmate's kites to a single source for approval and routing to the appropriate recipient (Compl. ¶ 74).  Munt asserts this interferes with the use of the grievance process (Compl. ¶ 74).  Munt asserts MCF–Stillwater placed him on kite management as retaliation for him using the grievance process to exhaust issues for court (Compl. ¶ 102).

On June 16, 2018 Defendant Hill ordered Munt to stop grieving mailroom issues (Compl. ¶ 78).  On September 24, 2018, Warden Smith told Munt, via a memo, to start speaking with staff instead of sending kites (Compl. ¶ 71).  Munt used a kite to ask if he was "being ordered to stop using the process" (Compl. ¶ 71).  Munt was placed on kite management on September 26 while housed at Minnesota Correctional Facility – Oak Park Heights ("MCF–OPH") (Compl. ¶ 72).  Munt asserts his kite management at MCF–OPH was a conspiratorial retaliation for Munt using the grievance process as required by the PLRA (Compl. ¶ 101).  As Munt describes, his placement on kite management "failed to sufficiently cool [his] exercise of his rights" so he was again told to talk to staff rather that writing kites (Compl. ¶ 76).  Munt alleges a new kite process was created on October 15, 2018 that "specifically targeted" him, including a modified chain of command (Compl. ¶ 76).  Munt asserts his grievances were refused because he followed this new chain of command (Compl. ¶ 76).

Munt asserts that, due to costs of copying and the time it takes to make copies, inmates are unable to preserve staff responses to kites (Compl. ¶¶ 72, 105).

### P.    Relief Requested

Munt asks the Court to declare the PLRA exhaustion requirement unconstitutional and prohibit enforcement thereof (Compl. ¶ 106). Munt requests all his previous lawsuits that were dismissed for failure to exhaust administrative remedies be reopened, specifically Case No. 16-cv-1206 (SRN/SER) (Compl. ¶ 107).[3] Munt further requests that the Court certify the legal question of the PLRA's constitutionality to a higher court. (Compl. ¶ 108).

Related to the PLRA exhaustion requirement, Munt asks the Court to find that the MNDOC's grievance procedure unconstitutionally impedes the right to petition courts and the right to habeas corpus (Compl. ¶ 109). Munt also wants the Court to find that defendants have "employed the flaws" in the grievance process to impede his access to the courts (Compl. ¶ 110).

Munt demands that the Court order the implementation of a new grievance procedure (Compl. ¶ 112). Munt demands that kite management be found to be retaliatory and be stopped (Compl. ¶¶ 113–14). Munt demands $100 per day in damages for each day he was on kite management and $1,000 per day in punitive damages for the same (Compl. ¶¶115–16). Further, Munt requests a similar finding as to the custom kite

---

[3] As discussed below, the Court found Munt failed to exhaust administrative remedies as related to Munt's double-bunking challenge in Case No. 16-cv-1206. All of Munt's other RLUIPA claims were dismissed on summary judgment.

management he was placed on (Compl. ¶¶ 118–19), and requests an elevated $1,000 per day in damages and $10,000 per day in punitive damages for the time he was on the custom grievance process (Compl. ¶ 120).

### Q.    Appendix

Munt divides the Appendix attached to his Complaint into several parts.  In the first part of the Appendix, Munt appears to recount issues with the Grievance Appeals Central Office (ECF No. 1-1, at 2–10).[4]  Despite including dates and involved parties, most of what Munt includes is conclusory and fails to elucidate his Complaint.  Munt regularly asserts that a defendant "blew off," rejected, refused, or ignored his grievances, but provides no supporting facts (ECF No. 1-1, at 2–10).  For example, in his most detailed assertions, Munt takes issue with staff's refusal to accept his grievance appeal regarding a January 11, 2018 discipline (ECF No. 1-1, at 4–5).  While Munt notes that the disciplinary charges were dropped, (ECF No. 1-1, at 4–5), he does not allege how rejecting a grievance to a no-longer-existent disciplinary charge affects his rights.  Another example:  Munt used the grievance process in an attempt to obtain a November 3, 2017 letter "as evidence for court" but asserts it was not processed because staff noted the process for disciplinary charges was separate from the grievance procedure he was using (ECF No. 1-1, at 5).

In the next section of the Appendix, Munt details problems while at MCF–OPH (ECF No. 1-1, at 11–28).  Munt takes issue with the fact that his grievances seeking

---

[4]  The Court uses ECF pagination for citations to Munt's Appendix.

termination or discipline of prison staff were rejected (ECF No. 1-1, at 12). Again, Munt claims myriad grievances were refused or returned but provides little to no clarifying details other than the date and offending staff member (ECF No. 1-1, at 11–28).

The following section of the Appendix details issues with the MCF–Stillwater staff (ECF No. 1-1, at 29–37). Even more than in the section detailing concerns at Oak Park Heights, Munt vaguely asserts various Stillwater staff "refused to respond to many kites," providing little to no explanatory details (ECF No. 1-1, at 29–37).

Munt then details purported "Examples of Delayed Staff Responses" (ECF No. 1-1, at 38–42). Munt provides the date he sent a kite, the responding staff member, and when he received the response to his kite (ECF No. 1-1, at 38–42). There is generally no additional information provided. For the most part, it appears that responses were sent to Munt within 14 days of his grievance and he received those responses approximately one week thereafter.

Munt then provides a section entitled "MN DOC Administrative Process" that is typed, rather than handwritten like all other portions of his Complaint and Appendix (ECF No. 1-1, at 44–65). Munt intermixes purported MNDOC policies with his own commentary, but it is hard to distinguish where one ends and the other begins. Munt's criticisms here mimic those found in his Complaint. This section also includes various MNDOC policies that have no information pertaining to grievances or appeals, and no other apparent relation to this lawsuit, such as: visitations, phone suspensions, religious requests, religious group requests, religious diet requests, Americans with Disability Act accommodation requests, inmate marriages, offensive materials confiscation, injury

claims, medical co-pays, outside healthcare requests, work termination, and issues with the MNDOC's monopolistic internal payment system (ECF No. 1-1, at 44–65).

Just like Munt's main Complaint, the Appendix and its disparate components are difficult to decipher and replete with conclusory allegations. The Appendix spans 65 pages which, when added to Munt's 64-page Complaint, creates a massive 129-page initial pleading. Setting aside considerations of the volume of Munt's pleading, the Appendix buttresses the Court's conclusion that Munt's lawsuit can be distilled into a single, overarching claim related to Munt's dissatisfaction with the MNDOC's grievance process that purportedly inhibits his ability to comply with the PLRA's administrative exhaustion requirement.

## III.   ANALYSIS

### A.   Rule 8

Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Gurman v. Metro Hous. and Redev. Auth.*, 842 F. Supp. 2d 1151, 1152 (D. Minn. 2011) ("A complaint must be concise, and it must be clear."). "A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012). Such complaints "unfairly burden defendants and courts" because they "shift[] onto the defendant[s] and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support."

12

*Gurman*, 842 F. Supp. 2d at 1153.  This practice is akin to "cough[ing] up an unsightly hairball of factual and legal allegations, stepp[ing] to the side, and invit[ing] the defendants and the Court to pick through the mess and determine if plaintiff[] may have pleaded a viable claim or two."  *Id.*

It is Munt's burden, "under both Rule 8 and Rule 11, to reasonably investigate [his] claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them."  *Id.*  Thus, the pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Munt's complaint is emphatically neither short nor plain; it is not concise and it is not clear.  Munt has foisted over 125 pages upon the Court and the defendants with the accompanying burden of sifting through his initial pleading for scraps of possible claims. The mere size of Munt's initial pleading is an unwieldy 129 pages that includes persistent generalized and vague allegations as to the MNDOC's grievance procedure.  Courts in this District have rejected complaints that pale in comparison.  *See, e.g.*, *Murphy v. Aurora Loan Servs., LLC*, Case No. 11-cv-2750 (ADM/JJK), 2013 WL 2403602, at *4 (D. Minn. May 31, 2013) (rejecting leave to file a 72-page second amended complaint); *Ellis v. City of Minneapolis*, 2012 WL 6652885, at *1 (D. Minn. Dec. 21, 2012) (dismissing 64-page complaint for noncompliance with Rule 8).

Looking beyond the size of Munt's initial pleading, the Court has already had to sift through it to dismiss more than 60% of the original 42 defendants because they were either named in the caption but not referred to the complaint, or referred to in the complaint but not named in the caption.

Munt does the same with his claims. Munt's "Preliminary Statement" to his Complaint contains the following caveat:

> Each claim for relief should be interpreted as being sought in the proper capacity. Ex: Damages are sought against Defendants in their individual capacities. Injunctive relief is sought against Defendants in their official capacities. Declaratory relief is sought against Defendants in both official and individual capacities. Costs are sought against Defendant in both official and individual capacities. Each claim is brought against relevant Defendants.

(Compl., at 6–7).[5] Thus, Munt thrust the burden upon the Court to decide which of the original 42 defendants are applicable to his purported 17+ claims. While he purports to divide damages and relief against defendants to the relevant capacity, he makes no such distinction with the actual claims themselves.

Simply put, Munt has thrust upon the defendants and the Court a difficult-to-decipher pleading. *See Richards v. Dayton*, Case No. 13-cv-3029 (JRT/JSM), 2015 WL 1522199, at *12 (D. Minn. Jan. 30, 2015) (recognizing failure to comply with Rule 8 where complaint "jump[ed] from topic to topic without any consistent method of organization," the "factual narrative [wa]s muddled, repetitive, and continually interrupted by political commentary, irrelevant anecdotes, and disparaging remarks about

---

[5] ECF pagination is used.

defendants"). But numerous generalized allegations do not metamorphose into an intelligible and actionable lawsuit. Munt cannot throw claims and defendants at the proverbial wall and leave it to the Court to figure out what might have stuck. Accordingly, the Court recommends that the entirety of Munt's Complaint be dismissed for noncompliance with Rule 8.

Nonetheless, as described below, the Court finds Munt's Complaint fails for other reasons that equally warrant dismissal.

### B.    Motion to Dismiss

#### 1.    Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)); *accord Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015). Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *see id.* ("The pleading must contain something

more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action.") (quotations and citation omitted). Additionally, complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). The court must draw reasonable inferences in the plaintiff's favor. *Zink*, 783 F.3d at 1098 (citation omitted).

In assessing a complaint by a *pro se* plaintiff, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quotation and citation omitted); *accord Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to *pro se* complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). But notwithstanding the liberal construal of such complaints, the *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d 912, 914 (8th Cir. 2004)). Thus, *pro se* litigants "must set a claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Stringer*, 446 F.3d at 802 (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

### 2.    The PLRA

The PLRA, 42 U.S.C. § 1997e(a), provides:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Brock*, 549 U.S. 199, 211 (2007).  The exhaustion requirement applies even if the administrative process cannot offer the relief sought.  *Booth v. Churner*, 532 U.S. 731, 741 (2001).  Simply put, the Supreme Court has "reject[ed] every attempt to deviate" from the PLRA's "textual mandate," *Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016), including rejecting exceptions for constitutional claims, *Woodford v. Ngo*, 548 U.S. 81, 91 n.2 (2006).  Thus, "[t]he only limit to § 1997e(a)'s mandate is the one baked into its text:  An inmate need exhaust only such administrative remedies as are 'available.'"  *Ross*, 136 S.Ct. at 1862.

Given the Supreme Court's clear pronouncements surrounding the PLRA's exhaustion requirement, Munt has no basis for his overarching challenge as to its constitutionality.  *Sarah v. Deshambo*, 67 F. App'x 346 (6th Cir. 2003) ("[T]he PLRA has been deemed a constitutional measure enacted to reduce frivolous prison litigation. Accordingly, the PLRA exhaustion requirement does not impermissibly infringe on any

of plaintiff's constitutional rights.") (citing *Wilson v. Yaklich*, 148 F.3d 596 (6th Cir. 1998); *Williams v. Wright*, 2010 WL 1904570, at *3–*4 (S.D. Ga. Mar. 25, 2010), *R&R adopted by* 2010 WL 1904563 (S.D. Ga. May 10, 2010) (rejecting constitutional challenge to the PLRA exhaustion requirement); *see also Mason v. Bridger*, 261 F. App'x 225 (11th Cir. 2008) (enforcement of PLRA's exhaustion requirement does not violate inmate's constitutional rights to access the courts or equal protection rights); *cf. Inmates of Suffolk Cty. Jail v. Rouse*, 129 F.3d 649 (1st Cir. 1997) (rejecting challenges to the constitutionality of the PLRA's consent decree termination provision under separation of powers doctrine, due process, and equal protection); *Gavin v. Branstad*, 122 F.3d 1081 (8th Cir. 1997) (same); *Mitchell v. Farcass*, 112 F.3d 1483 (11th Cir. 1997) (rejecting equal protection challenge to the constitutionality of the PLRA's fee requirement). Even if the MNDOC is putting up barriers in an attempt to prevent Munt from exhausting administrative remedies as Munt claims, Munt's challenge still fails. The PLRA provides no barrier whatsoever to prisoner lawsuits where there are no available administrative remedies. *Ross*, 136 S.Ct. at 1862. So long as Munt can credibly allege that he has exhausted administrative remedies or that exhaustion is unavailable to him, the PLRA's exhaustion requirement does not prohibit his lawsuit. Thus, Munt fails to state a claim as to the unconstitutionality of the PLRA's exhaustion requirement.

### 3.   Retaliation

A retaliation claim requires Munt to show: "(1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse

action was motivated at least in part by the exercise of the protected activity." *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013). The same analysis applies to acts of retaliatory discipline. *Meuir v. Greene Cty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) ("A prima facie case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline."). Allegations of retaliation must be more than speculative and conclusory to state a claim. *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam).

"The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). There is no doubt that Munt is a frequent user of the prison grievance process as well as a regular litigator. Specifically, Munt pled that he was placed on kite management because of his lawsuits and use of the grievance process.

There is no constitutionally protected right to a grievance procedure. *See, e.g.*, *Lombolt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (denial of grievances does not state a substantive constitutional claim). It follows that there is no right to unfettered access to prison grievance procedures. *Walker v. Mich. Dept. of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have also found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures.") (collecting cases); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam); *see Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (federal grievance regulations providing for administrative remedy procedure do not create liberty

19

interest in access to that procedure). Even allegations that a grievance was improperly investigated or were not adequately considered failed to state a claim. *Thomas v. Banks*, 584 F. App'x 291, 291 (8th Cir. 2014) (per curiam); *King v. Houston*, 556 F. App'x 561, 562–63 (8th Cir. 2014) (per curiam). Further, an inability to grieve certain issues does not provide for constitutional liability. *Hodgson v. Fabian*, 378 F. App'x 592, 594 (8th Cir. 2010) (inability to grieve mailroom issues does not create due process violation).

Munt has not pled and cannot show he was subject to discipline or an adverse action. Munt's pleading makes clear that he was still afforded an opportunity to grieve prison conditions to prison staff. His ability to grieve was not foreclosed, only his desired pace of grievances was hampered. Thus, Munt cannot allege the adverse action required to state a retaliation claim.

Regardless, Munt cannot show that placement on kite management would chill a person of ordinary firmness. Kite management did not deny Munt the ability to file grievances, but rather funneled his grievances to a single prison staff person for screening and routing. The mere fact that grievances were coordinated through a single person would not deter a person of reasonable firmness from filing legitimate grievances. *Walker*, 128 F. App'x at 496.

### 4. Access to Courts

"The Constitution guarantees prisoners a right to access the courts." *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007).

> To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in

a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.

*Id.* at 680.

Here, Munt fails to plead an access to the courts claim. While Munt asserts the MNDOC has placed barriers on the grievance system to prevent him from exhausting claims under the PLRA, this has not prevented Munt from filing lawsuits. Munt admits this instant lawsuit overlaps with other lawsuits he has filed: (1) Case No. 17-cv-5215 (SRN/SER); Case No. 18-cv-2144 (JNE/TNL); Case No. 18-cv-3390 (DWF/ECW). (Compl., at 60–62). Munt indicates that all these lawsuits "would have been brought as one large suit were it not for the impediments, as yet unremedied by this court, which rendered that impossible" (Compl., at 64). Without even addressing whether his underlying legal claims are meritorious or nonfrivolous, Munt's demonstrated ability to bring *four* lawsuits in less than 15 months related to the MNDOC's grievance procedures and his ability to access the courts renders his argument incredible.

Further, as discussed above, the PLRA does not preclude unexhausted claims so long as a plaintiff can credibly allege the grievance procedure was unavailable. *Ross*, 136 S.Ct. at 1862. Munt cannot credibly claim so here. As already noted, the imposition of kite management did not deny Munt the ability to file grievances, but rather funneled his grievances to a single prison staff person for screening and routing. This coordination forced upon Munt's grievances did not render the grievance process unavailable, nor did it restrict Munt's access to the courts.

### 5.    Conspiracy

Munt alleges a system-wide conspiracy to deprive his access to the grievance

process.  To prove a Section 1985 conspiracy claim, Munt must show:

> (1) that the defendants did "conspire," (2) "for the purpose of depriving,
> either directly or indirectly, any person or class of persons of equal
> protection of the laws, or equal privileges and immunities under the laws,"
> (3) that one or more of the conspirators did, or caused to be done, "any act
> in furtherance of the object of the conspiracy," and (4) that another person
> was "injured in his person or property or deprived of having and exercising
> any right or privilege of a citizen of the United States."

*Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (quoting 42 U.S.C. § 1985(3)).

Munt cannot meet the first prong of a conspiracy claim.  Defendants are all

employees and agents of the MNDOC.  A government entity cannot conspire with itself.

*Habhab v. Hon*, 536 F.3d 963, 969 (8th Cir. 2008); *Barstad v. Murray Cty.*, 420 F.3d

880, 887 (8th Cir. 2005).  While "[a]n exception arises when the agents were, at the time

of the conspiracy, acting beyond the scope of their authority or for their own benefit,"

*Barstad*, 420 F.3d at 887, Munt makes no such allegation here.  Rather, Munt squarely

alleges the opposite:  that the MNDOC's grievance process and Defendants'

implementation thereof impeded his access to the courts.  Absent any ability to conspire,

Munt's conspiracy claim fails.

Nor can Munt meet the second prong.  For a conspiracy claim, the conspiracy

must be for the purpose of depriving equal protection of the laws or equal privileges and

immunities.  This requires "some racial, or perhaps otherwise class-based, invidiously

discriminatory animus behind the conspirators' action."  *Kush v. Rutledge*, 460 U.S. 719,

726 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  Munt alleges no

conspiracy based on his race or membership in some protected class of persons. Instead, Munt claims that the impediments he faces in the grievance process are broadly applicable to all prisoners housed in Minnesota. Prisoners do not constitute a suspect class. *Higgins v. Carpenter*, 258 F.3d 797, 799 (8th Cir. 2001) (per curiam) (citing *Murray v. Dosal*, 150 F.3d 814, 818 (8th Cir. 1998) (per curiam)). Because Munt cannot assert a conspiracy aimed at depriving equal protection, his conspiracy claim fails.

Additionally, Munt cannot meet the fourth prong—injury—as discussed above because there is no constitutional right to a grievance process and his access to the courts was not denied. Absent an injury, a conspiracy claims fails.

### C.    Dismissal with Prejudice and Vexatious Litigant Finding

The Court has concluded that all of Munt's claims should be dismissed for failure to state a claim. The Court has also concluded that Munt's Complaint should be independently dismissed for failure to comply with Rule 8.

"Ordinarily dismissal of a plaintiff's complaint for failure to comply with Rule 8 should be with leave to amend. But if the plaintiff has persisted in violating Rule 8 the district court is justified in dismissing the complaint with prejudice." *Michaelis v. Nebraska State Bar Ass'n*, 717 F.2d 437, 438–39 (8th Cir. 1983). Contrary to Rule 8, dismissals for failure to state a claim pursuant to Rule 12(b)(6) are commonly with prejudice. *See, e.g.*, *Grawitch v. Charter Commc'ns, Inc.*, 750 F.3d 956 (8th Cir. 2014) (affirming Rule 12(b)(6) dismissal with prejudice of original complaint); *Ulrich v. Pope Cty.*, 715 F.3d 1054 (8th Cir. 2013) (same); *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909 (8th Cir. 2002) (same).

As Munt himself notes in his Complaint, this lawsuit is one of a grouping of four lawsuits he has filed related to similar, if not identical, legal claims concerning the prison grievance system and his access to the courts. With his instant pleading surpassing 125 pages, Munt thrust upon the Court and Defendants the duty of sifting through those pages to find claims and factual support. Although the Court distilled Munt's claims into a general and fairly simple, overarching allegation, Munt purported to assert over 17 individual claims, none of which he was able to support factually or legally.

Munt's lawsuits have been repeatedly dismissed for similar reasons.[6] In Case No. 15-cv-582, Munt brought a Section 1983 claim asserting an Eighth Amendment violation because he was issued glasses in prison instead of contact lenses, causing headaches. *Munt v. Larson*, 2017 WL 6812604, at *5 (D. Minn. June 5, 2017). Munt expanded that lawsuit to assert claims under the Americans with Disability Act in that he was denied meaningful access to law library services due to his alleged disability. *Id.* at *9. Munt's claims were rejected at summary judgment. Relevant here, the Court found "Munt has not been hindered in pursuing his legal claim is evidenced by both the number and comprehensive nature of Munt's fillings prepared in this litigation." *Id.* at *21. Additionally, the Court rejected Munt's alleged constitutional claims that defendants did not follow the MNDOC policy or were delinquent in handling his grievances. *Id.* The Court adopted the report and recommendation and dismissed Munt's lawsuit. Case No. 15-cv-582 (SRN/SER) (Aug. 25, 2017 Order, ECF No. 196) (filed under seal). That

---

[6] Munt has also filed several habeas corpus proceedings, but the Court focuses only on his civil lawsuits in this District.

decision was affirmed by the Eighth Circuit. *Munt v. Larson*, 740 F. App'x 108 (8th Cir. 2018) (per curiam), *cert. denied* 139 S.Ct. 1192 (2019).

In Case No. 16-cv-1206, Munt asserted that the MNDOC shower policy contravened his religious beliefs because he was present among others while unclothed. *Munt v. Minn. Dept. of Corr.*, 2018 WL 1046506, at *1–*2 (D. Minn. Feb. 26, 2018). Munt asserted that privacy required he be permitted to shower alone and be provided a single-occupancy cell. *Id.* Munt's claims under the Religious Land Use and Institutionalized Persons Act were rejected on summary judgment. *Id.* at *9. That order was upheld on appeal. *Munt v. Minn. Dept. of Corr.*, 745 F. App'x 656 (8th Cir. 2018) (per curiam), *cert. dismissed* 139 S.Ct. 1649 (2019).

In Case No. 17-cv-5215, Munt brought a Section 1983 claim on the grounds that his access to the courts was restricted due to "onerous copying, printing, and postage policies," inadequate access to legal resources, and property policies limiting his ability to maintain legal work. *Munt v. Roy*, 2019 WL 157289, at *1 (D. Minn. Jan. 10, 2019). The Court found Munt failed to state a claim related to copying, printing, and postage policies and again noted that Munt's filing activity demonstrated the implausible nature of his claims. *Id.* at *3. The Court rejected Munt's other claims as well for failing to state a claim. *Id.* at *3–*5. The dismissal was affirmed on appeal. *Munt v. Schnell*, 777 F. App'x 181 (8th Cir. 2019).

In Case No. 18-cv-2144, Munt brought a Section 1983 action alleging that MNDOC employees retaliated against him for exercising his constitutional right of access to the courts. *Munt v. Roy*, 2019 WL 4389005, at *1 (D. Minn. Sept. 13, 2019).

This lawsuit stemmed from a state habeas petition concerning discipline Munt received after giving a love letter to a corrections officer and purportedly false documents submitted by prison officials in Case No. 17-cv-5215. *Id.* at *1–*3. Like the instant lawsuit and others, Munt asserts that defendants "failed to process and respond to various kites that he filed" related to his discipline. *Id.* at *3. Munt also alleged his access to the courts was impeded by restricted access to legal resources while he was in segregation. *Id.* Munt's claims were all dismissed. *Id.* at *13–*14.

In Case No. 18-cv-3390, Munt brought Section 1983 claims for retaliation, due process, equal protection, access to the courts, conspiracy, and a constitutional challenge to disciplinary rules. (Case No. 18-cv-3390, ECF No. 93, at 4). All of Munt's claims were dismissed. (Case No. 18-cv-3390, ECF No. 93).

Munt has two similar lawsuits that are pending in this District. In Case No. 19-cv-1142, Munt asserts a retaliation claim, a conspiracy claim, and an equal protection claim. Munt asserts MNDOC staff spread rumors about him for using kites and gathering evidence for lawsuits. In Case No. 19-cv-1560, Munt brings claims for retaliation, access to the courts, and conspiracy. Munt asserts he was disciplined because of an internet shortcut found in his computer folder on the prison law library computer network. As a result, Munt asserts, he could not pursue his pending cases or develop new lawsuits. Defendants have moved to dismiss in each lawsuit.

Thus, as this litigation history shows, Munt has litigated claims multiple times. Through the abundant pages the Court has used in issuing orders in Munt's cases, he has no doubt been apprised of the legal elements of his claims and the standards applied

thereto.  There is no reason Munt should be able to relitigate meritless claims over and over again.  Munt is abusing a legal system that is intended to provide avenues of redress for legitimate, sufficiently pled grievances, including for those whose liberties have been legally restricted by courts of law.  This deliberate abuse of the legal system and persistent failure to bring meritorious claims warrants dismissal with prejudice.

But a mere dismissal with prejudice of Munt's instant claims does not end the analysis.  As Munt himself admits and the record bears out, Munt litigates his grievances with the prison system frequently and repeatedly.  A federal court has authority to control and manage matters pending before it, and may, in its discretion, "place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process."  *See In re Tyler*, 839 F.2d 1290, 1293 (8th Cir. 1988).  While *pro se* litigants have a right of access to the courts, that right does not ensure an unrestricted opportunity to pursue malicious or abusive proceedings. *Id.* at 1292.  "Frivolous, bad faith claims consume a significant amount of judicial resources, diverting the time and energy of the judiciary away from processing good faith claims."  *Id.*  When a litigant engages in a pattern of filing frivolous claims, the court may order the litigant to obtain court approval before filing future lawsuits.  *Sassower v. Carlson*, 930 F.2d 583, 584 (8th Cir. 1991).

As recounted, Munt has a lengthy history of failed litigation in this District.  While the Court provided a general overview of Munt's previous lawsuits, underlying almost all of them are repeated, frivolous motions for preliminary injunctions or temporary restraining orders, repeated attempts to expand proceedings via amendment of pleadings,

and myriad other filings that complicate and confuse the underlying claims.  In short,

Munt's litigation record warrants placement on this District's list of restricted filers.  *See*

*Rickmyer v. ABM Sec. Servs., Inc.*, Case No. 15-cv-4221 (JRT/FLN), 2016 WL 1248677,

at *5 (D. Minn. Mar. 29, 2016).

> In reaching this conclusion, the Court has considered the applicable factors:
>
> (1) the party's history of litigation, particularly whether he has filed
> vexatious, harassing, or duplicative lawsuits; (2) whether the party has an
> objectively good faith basis for pursuing the litigation; (3) whether the
> party has caused needless expense to other parties or has posed an
> unnecessary burden on the courts; and (4) whether other sanctions would
> adequately protect the court and other parties.

*Westley v. Bryant*, Case No. 14-cv-5002 (PJS/BRT), 2015 WL 2242161, at*10 (D. Minn.

May 12, 2015).  Munt has admitted to filing lawsuits that are duplicative of others but

blames defendants for his own legal tactics and choices, taking no responsibility for his

lawsuits' failures.  Munt's lawsuits overlap his previous lawsuits that were dismissed,

depriving him of any claim of an objective good faith basis for filing the subsequent

lawsuits.  Filing duplicative lawsuits not only wastes the Court's resources but also

causes needless expense and unnecessary burdens for defendants who must defend

against Munt's claims time and time again.  Munt has turned himself into the very

"litigating engine" the PLRA was designed to prevent.  *Lewis*, 518 U.S. at 355.

Therefore, the Court recommends that Munt be restricted from filing any new legal

actions in this District unless he is represented by counsel or first obtains prior written

authorization to file an action from a judicial officer of this District.

## IV.    MUNT'S REQUEST FOR SANCTIONS

Munt filed a motion entitled "Request for Court Actions" (ECF No. 47).[7]  In this motion he requests a stay, requests to amend his complaint, requests to file an "oversized complaint," and requests sanctions.  The Court previously addressed all but Munt's sanctions request (ECF No. 62).  Munt objected to that Order (ECF No. 63), and the District Court upheld it (ECF No. 65).

Munt requests that the Court sanction the "malicious efforts" of Defendants— presumably a reference to his assertion that his legal materials were taken from him when he was transferred from MCF-OPH to another facility.  As a sanction, Munt demands return to MCF–OPH, reinstatement to his job at MCF–OPH with no reduction in pay, and a return of his purportedly destroyed legal property (ECF No. 47, at 7).  Munt further demands that if any legal property is not returned that the Court grant judgment in his favor (ECF No. 47, at 7–8).  Munt also demands "punitive sanctions" against Defendants and their counsel (ECF No. 47, at 8).

Munt seeks relief that the Court has no power to grant, even if it were inclined to do so.  A prisoner enjoys no constitutional right to a particular place of confinement. *Meachum v. Fano*, 427 U.S. 215, 224–25 (1976); *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993).  Prisoners do not have the right to their choice of cells; transfers within a prison and to other prisons is within the discretion of prison officials.  *Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir. 1984) (per curiam).  As for Munt's other sanctions requests, his

---

[7]  This motion is expanded upon by ECF No. 61.  The two filings are considered jointly.

assertion that his legal property was taken lacks credibility; this is an allegation that Munt asserts throughout his many lawsuits and has been repeatedly rejected. To the extent Munt requests something akin to Rule 11 sanctions against Defendants' counsel, the request is defective for numerous reasons, including that he failed to properly serve such a motion on Defendants as required by Federal Rule of Civil Procedure 11(c)(2). As such, Munt's request for sanctions should be denied in its entirety.

## V.    RECOMMENDATION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Defendants' Motion to Dismiss (ECF No. 38) be **GRANTED**;

2.    Plaintiff Joel Marvin Munt's Complaint (ECF No. 1) be **DISMISSED WITH PREJUDICE**;

3.    Plaintiff Joel Marvin Munt's "Requests for Court Actions" (ECF No. 47) and "Request to Reply and Reply to Defendants' Response to His Request for Court Actions" (ECF No. 61) be **DENIED**; and

4.    Joel Marvin Munt be restricted from filing any new legal actions in this District unless he is represented by counsel or first obtains prior written authorization to file an action from a judicial officer of this District.

Date:  March 12, 2020                 s/ *Hildy Bowbeer*
                                    HILDY BOWBEER
                                    United States Magistrate Judge

## **NOTICE**

**Filings Objections:**  This Report and Recommendation is not an order or judgement of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).